## FRENCH v. SEAMANS.

(Supreme Court, Appellate Division, Fourth Department.   March 26, 1898.)

1. JUDGES—POWER OF JUSTICE OF APPELLATE COURT TO RECEIVE VERDICT.
    Under Const. art. 6, § 2, providing that no justice of the appellate division of the supreme court shall exercise the powers of a justice of such court other than those of a justice out of court, or the hearing and decision of motions submitted by consent, and Code Civ. Proc. § 768, defining a motion as an application for an order, such a justice has no power to receive a verdict in the absence of the trial justice, and a verdict so received and judgment thereon are void.

2. SAME—WAIVER OF OBJECTIONS.
    A party is not estopped to object that a verdict was received by a justice of the appellate division having no power to do so, in the absence of a trial justice, by the fact that his counsel consented thereto, though, if the verdict be set aside, the prevailing party will lose his right of action by the death of the adverse party after verdict.

3. ABATEMENT AND REVIVAL—ACTION FOR BREACH OF MARRIAGE PROMISE.
    An action for breach of promise of marriage does not survive the death of one of the parties.

Appeal from trial term, Steuben county.

Action by Nellie French against Alvin Seamans. From an order refusing to set aside the judgment for plaintiff (48 N. Y. Supp. 9), defendant's executrix appeals.   Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John F. Parkhurst, for appellant.
John F. Little, for respondent.

WARD, J.   This action was brought by the plaintiff against Alvin Seamans, defendant, to recover damages for a breach of promise of marriage.   The action was brought to trial at the Steuben trial term, in September, 1897, held by a justice of this court.   The trial was commenced on September 16th, and continued until the afternoon of the 18th, when the jury, at about 2 o'clock p. m., after a charge by the court, retired to deliberate upon their verdict.   The trial justice resided at Rochester.   It was the last case to be tried at the term, and he was anxious to take a 3 o'clock train to return to his home from Bath, where the trial was held.   As it appeared probable that the jury would not return a verdict in time for the justice to leave as he desired, he happening to meet a justice of the supreme court, who was at Bath, and who was a member of the appellate division of the supreme court in this state, a conversation was had between these justices as to whether the appellate division justice could not receive the verdict of the jury in the absence of the trial justice, and a conclusion was reached that, if the parties to the action consented that the justice of the appellate court could receive the verdict, he would do so; whereupon counsel for the respective parties were consulted, and they agreed that the justice of the appellate court might receive the verdict, and he accordingly repaired to the court house, when it was announced that the jury had agreed, and in the presence of the respective parties and their counsel, and without objection from any one, the verdict was received and entered by the clerk, in the sum of $1,000 against the defendant.   Two days later, and on the 20th

of September, 1897, the defendant, Alvin Seamans, died. On the 13th of October, 1897, judgment was entered on the verdict by order of the court, and docketed in Steuben county, and the proper entry of the death of the defendant after the verdict, and before entry of judgment, was made upon the docket. The deceased defendant left a will, in which he appointed his daughter, Alvaretta Merrill, as executrix, who received letters testamentary upon the probate of the will, and who makes the motion which resulted in the order appealed from. The jury did not come in for instructions, and were not polled, and the justice of the appellate court did no act with reference to the jury except to preside in the court upon the reception of the verdict.

The contention of the appellant is that the justice of the appellate court had no power to receive the verdict, and consequently no valid verdict was rendered, and that no judgment or other proceeding could be predicated thereon. Section 2 of article 6 of the present state constitution, which created the appellate division of the supreme court, provides:

"No justice of the appellate division shall exercise any of the powers of a justice of the supreme court other than those of a justice out of court, and those pertaining to the appellate division, or to the hearing and decision of motions submitted by consent of counsel."

The purpose of the constitution was to absolutely divorce the judges of the appellate division from all connection with the trial court except as to motions submitted by consent of counsel, and the command of the constitution is clear and imperative. The jurisdiction exercised by justices of the supreme court as to proceedings in trial courts ceased upon their becoming justices of the appellate division. The reception of a verdict is not a motion. Section 768 of the Code of Civil Procedure provides that "an application for an order is a motion." A verdict has been defined to be "the unanimous decision made by a jury, and reported to the court on the matters lawfully submitted to them in the course of the trial of a cause." 2 Bouv. Dict. 635.

The verdict is a very important act. It is the culmination of the trial, and embodies the conclusions of the jury upon the questions of fact litigated upon the trial. It can only be delivered to a court legally constituted to receive it. The court has important duties to discharge in connection with it. Where a verdict, through either fraud, mistake, or negligence, is rendered contrary to the facts, the court may interfere and correct the verdict so as to accord with the fact. Hicenbothem v. Lowenbein, 6 Rob. (N. Y.) 561. Where the jury have found nominal or insufficient damages where substantial damages are shown, the court may call the attention of the jury to the matter, and require them to retire and reconsider their verdict. Rogan v. Mullins, 22 App. Div. 117, 47 N. Y. Supp. 920. The jury may be polled at the request of a party, upon the coming in of the verdict. The duty, therefore, of the court, in receiving the verdict, is not a formal matter, but an important act in the course of the trial, and the appellate justice had no more power to receive this verdict than to perform any other important act in the course of the trial, or to conduct the trial itself. There was, therefore, no court present in a constitutional sense, and we reach the consideration of the question whether the consent of the parties conferred jurisdiction upon the appellate division justice, which

the constitution had prohibited. The constitutional provision is founded in a wise public policy, and consents of parties that violate public policy are nugatory. The law has defined what officers shall constitute a trial court, and it is not in the power of parties to substitute for those officers selections of their own. It is laid down in 28 Am. & Eng. Enc. Law, at page 238, that—

"The reception of the verdict is the function of the judge who presided at the trial of the cause, and it has been held that it may not be delegated by him to another; that neither the clerk of the court, nor an attorney, though with the consent of the parties concerned, can lawfully preside at the reception of the result of the jury's deliberation." Citing Willett v. Porter, 42 Ind. 250; Britton v. Fox, 39 Ind. 369; McClure v. State, 77 Ind. 287.

Quinn v. State, 130 Ind. 340, 30 N. E. 300; Wright v. Boon, 2 Greene, 458; Hinman v. People, 13 Hun, 266; Hiller v. English, 4 Strob. 486; Railroad Co. v. Polly, 14 Grat. 447.

In Willett v. Porter, the judge, with the consent of the parties, authorized the clerk to preside at the return of the jury to receive the verdict. It was held that a verdict so received was wholly invalid. 2 Thomp. Trials, § 2632.

In Railroad Co. v. Polly, the court of appeals of Virginia characterized the practice of the circuit court in authorizing the clerk with the consent of the parties to receive the verdict in the absence of the judge as pernicious, and not sanctioned by any authority, legislative or judicial.

In Hinman v. People, Judge Mullin said:

"The rule is too well settled to be departed from or modified that a verdict must be delivered in open court. It cannot be received privately or by the clerk or other person in the absence of the court, not even by agreement of counsel. [Citing 1 Chit. Cr. Law, 636.] To permit verdicts to be received otherwise than in open court would lead to the greatest abuses. The people or the prisoner might be greatly wronged without any means of redress, or the administration of the law brought into contempt or subjected to suspicion."

In Ingersoll v. Town of Lansing, 51 Hun, 101, 5 N. Y. Supp. 288, the trial court, after submitting the case to the jury, on March 16th, stated that, when it adjourned for the day, it would adjourn until the 20th, and, if the jury had not agreed before adjournment, by consent of parties the verdict could be reported to the clerk. The judge left for home before the jury agreed, and the clerk, in his absence, received the verdict. The judgment was reversed, the court holding that there could not be a circuit court without the presence of a justice of the supreme court, and no authority except the circuit court had authority to control the jury or receive its verdict.

As early as the case of Coffin v. Tracy, 3 Caines, 129, the principle was asserted in this state that parties could not confer jurisdiction upon the court by their own acts in regard to subjects not within their jurisdiction. Thus, if a justice's court try an action for slander, libel, or assault and battery, the proceedings are void, though the parties appear and go to trial. And see the numerous cases cited in the notes to that case.

And in Cancemi v. People, 18 N. Y. 136, the court of appeals says:

"But it is settled that even in civil cases consent will not confer jurisdiction of the subject-matter, and, where such jurisdiction exists, a change by consent

of the mode of proceeding may be so extensive as to convert the case from a judicial proceeding into a mere arbitration."

In People v. Bork, 96 N. Y. 188, 198, the trial occurred after the change in the law dispensing with the presence of justices of the sessions in a court of oyer and terminer, but, nevertheless, two justices took part with the judge of the supreme court in imposing a sentence upon a person convicted of crime. It was held that the participation of the justices of the sessions in the sentence rendered it void.

In Hinman v. People, supra, in a court of general sessions, a verdict was received, and the jury polled, without objection on the part of the defendant's counsel, in the absence of the two justices. It was held that the county judge had no power to receive the verdict, and the sentence was set aside.

In Chambers v. Clearwater, 1 Abb. Dec. 341, a judgment was attempted to be rendered by a judge who was disqualified by reason of consanguinity with one of the parties. It was held that the judgment was utterly void, and incapable of being made good by any omission, waiver, or consent.

It is unnecessary to multiply cases upon this subject. The learned counsel for the respondent insists that, although the appellate division justice may have been disqualified from receiving the verdict, the appellant is estopped, by reason of the conduct of the defendant and his counsel, from taking this objection, inasmuch as the effect would be injurious to the respondent, and a substantial right would be lost to the respondent if the appellant were permitted to repudiate his consent that the appellate division judge might receive the verdict. It is, indeed, true that, if the appellant's contention prevails here, the right of ultimate recovery for the damages for the breach of promise of marriage will be lost in consequence of the death of the defendant, as the cause of action does not survive. Wade v. Kalbfleisch, 58 N. Y. 282. And we would be glad to find some legal reason for avoiding such a result under the circumstances of this case, but we apprehend that the principle is unknown to the law that a court can be created or jurisdiction conferred upon a court by an estoppel. A party may be estopped from asserting or may waive a right simply pertaining to himself, even if it be statutory or constitutional; but if what he attempts to waive affects the public, or if it involves the constitution or jurisdiction of courts of justice and the administration of the laws, there can be no waiver or estoppel, because the rights of the public intervene, and it is against public policy. If parties litigating are at liberty to stipulate away the procedure and the security with which the law surrounds trials and proceedings in courts of justice, and substitute creations of their own in their place, then they can in effect abolish courts of justice, or use them at their convenience. The doctrine of waiver or estoppel does not go so far.

Maynard, J., in speaking for the court of appeals in Sentenis v. Ladew, 140 N. Y. 466, 35 N. E. 650, says:

"A party may waive a rule of law, or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved; and, having once done so, he cannot subsequently invoke its protection."

Careful research and consideration lead us to the conclusion that the proceeding was not warranted in law, and we are therefore compelled to reverse the order appealed from. The motion to vacate and set aside the verdict, judgment, and the proceedings founded thereon should be granted, but, under the circumstances of this case, there should be no costs imposed upon the respondent. All concur.

HARDIN, P. J. (concurring). By section 2 of article 6 of the constitution, a justice of the appellate division is inhibited from exercising "any of the powers of a justice of the supreme court other than those of a justice out of court, and those pertaining to the appellate division or to the hearing and decision of motions submitted by consent of counsel." Prior to being designated as a justice of the appellate division, a justice of the supreme court may hold a special term or a trial term of court. After such designation takes place, the power to hold a special term or a trial term is taken away from a justice of the appellate division. In order to support the action of a justice of the appellate division in receiving the verdict in this case, it is necessary to hold that such justice of the appellate division was authorized to hold, to sit in, and to preside over a trial term. To thus hold is to disregard the provision of the constitution which provides that no justice of the appellate division shall exercise any powers of a justice of the supreme court. It would seem that the justice of the appellate division who entered the trial court room, and took a position upon the bench, had no more power to preside or to exercise the functions which belonged to a trial term than a layman. It seems to follow, therefore, that the verdict was received by the clerk, and entered in the minutes, without any officer authorized to perform judicial duties.

It is claimed that the stipulation made (although not in writing) invested the justice of the appellate division with the judicial powers to preside at a trial term. If that stipulation related simply to the rights of the parties, a different question would be presented. It relates, however, to the investing of an appellate justice with functions which the constitution declares expressly he shall not exercise. The stipulation, therefore, does not fall within the usual rule permitting parties to waive a statutory or constitutional provision made in their behalf. Phyfe v. Eimer, 45 N. Y. 104; People v. Quigg, 59 N. Y. 83. It was not competent for the parties to waive the constitutional inhibition, and their attempt to do so failed to invest the appellate justice with power and jurisdiction. Sentenis v. Ladew, 140 N. Y. 466, 35 N. E. 650, and cases there cited.

The foregoing views, in connection with those expressed in the opinion of WARD, J., lead me to vote for a reversal.